Your Honors. Good morning. I'm going to try to save three minutes for rebuttal, please. Just keep an eye on the clock, please. Good morning, Jed Kurzman for the appellants. This appeal rests on three independent grounds for reversal. First, the district court excluded plaintiff's only infectious disease expert, Dr. Offer Levy. Even though his opinions were commonly disclosed and constituted a classic rebuttal testimony under Rule 26. The second ground, the district court permitted defendants treating physicians to provide undisclosed expert testimony regarding the standard of care and then relied on those opinions to find no negligence. Lastly, in accordance with Stilgamesh Tribe of Indians, the district court's factual findings were not explicit enough to give the appellate court a clear understanding of the basis of the trial court's decision. These errors prejudice plaintiffs and require a new trial. And I'll begin with Dr. Levy. The district court abuses discretion by striking plaintiff's only infectious disease expert, even though his report was timely disclosed per the rules and his textbook rebuttal under Rule 26A2D2. The district court What is the standard or review for that question? Is an abusive standard, Your Honor. It's a high level. It's abusive discretion, right? Yes, Your Honor. Well, I was a DJ, that's why I asked you that question. So I, and this DJ, did the DJ have the jury out there listening to what was going on? The DJ refused our request for a jury, Your Honor. Well, there was no jury. None whatsoever. It was all in front of her. Correct, Your Honor. And she's the one who then decided that this testimony was not, was going to be struck. Correct, Your Honor. And what did she say were the reasons it was going to be struck? Unfortunately, I think she gave the opinion that it would be cumulative to Dr. Adam Levy's opinion. Yeah, she said, didn't Offer Levy's testimony overlap with Adam Levy and Dr. Deputy? Correct, Your Honor. And didn't those other experts present their theory of causation? They presented their theory of causation, Your Honor. Yes, they did not rebut defendant's theory. And is there any authority that would tell this district judge in the same position as me that to exclude this other testimony would be an abuse of discretion? Yes, there is, Your Honor. What? R&R Sales, Your Honor, says if you're going to... R&R Sales framework, why would that even apply here? Because R&R Sales framework, Your Honor, sets forth clearly that to remove an expert who's been properly noticed and disclosed requires a showing of bad faith. None was done. Willfulness, none was done. There was no discussion that the expert was filed late, disclosed late. There's no discussion there was bad faith. You've ruled several cases, this court, Ninth Circuit, that if it's properly disclosed and it meets the threshold under Baker v. Seaworld where it is rebutted directly to the causation, to the position it is rebutting. And that is the difference in this case, Your Honors. And if I can briefly explain, Adam Levy set forth that a traumatic force-up delivery was inappropriate in the circumstance of a ten-and-a-half-pound infant that was in the 99th percentile of size and weight in this country. This was a large baby not required for force-up delivery. Dr. Adam Levy discussed that issue. Dr. Deputy discussed the issue of whether or not that delivery related to the E. coli infection the baby suffered. Dr. Wiswell. You're going to the argument. But the bottom line of my question was, as I looked at R&R sales, Yes, Your Honor. the 37C1 framework I wasn't even sure would apply here. And the reason I don't think it would apply here is because the exclusion of that testimony didn't really cause any problem because you had other experts which could offer their testimony about causation. With all due respect, Your Honor, I disagree. And the reason I disagree is I'm not disagreeing. I'm asking you the question. The question, Your Honor I'm looking at R&R sales, and I know what R&R sales says, but I don't know that it really applies. Because in this instance, you had other experts which could testify about causation. So no other expert could testify as to what Dr. Wiswell, the defendants expert, brought up for the first time in his deposition. Dr. Wiswell set forth that regardless of the type of delivery, this was an inevitable failure on this baby. That this baby was going to suffer and fail regardless of any type of delivery method. That is a brand-new causation opinion which broke the causal link in plaintiff's case. Plaintiffs argued this force-up delivery caused a breakdown of the skin. The breakdown of the skin allowed E. coli to take effect. The E. coli neurologically damaged this child. Defendants argued originally this was not a decision of force-up delivery that was improper. They felt the delivery met the standard of care. Our causation went to that issue. Force-up delivery was improper. Force-up delivery was proper. Defendants added a new causal link when they said through Dr. Wiswell, regardless of force-up delivery, regardless of C-section delivery, regardless of any delivery this baby was going to get E. coli and fail, it's inevitable. That is a new causal opinion that Dr. Offer-Levy, an infectious disease expert, commented that he was going to refute. Right, but isn't the rebuttal to that, why isn't the rebuttal to that just restating the plaintiff's theory? Because the rebuttal to that is, what made this baby different from the millions of babies delivered every day? Parents have E. coli. It is natural that E. coli, which comes from the poop, pardon me, that comes during the delivery happens. Why did this baby fail? This baby failed, according to defendants, for no reason. That's just what was going to happen to this baby. I understand, but then your response to that is, no, the injury arose because of this reason, and you had already offered this reason. Respectfully, Your Honor, we argued that the forcep delivery was the mechanism of why this baby failed. Right, right, so what was new in rebuttal? How would the rebuttal look different from the point that your opening expert had already said that, no, that's incorrect, it is this reason as opposed to the defendant's theory of any reason? Yes, Your Honor. Our position is this baby failed because of the forcep delivery. The new opinion is the baby was going to fail regardless. No, but in order to, I think, win your point on the rebuttal is, you've several times now given us the opening plaintiff's theory and the defendant's answering theory. How does the rebuttal theory look different to the district court than the opening theory does, other than now the district court has an understanding of what the defendant's theory is? Now that the defendant's theory is the infection was inevitable, you needed rebuttal opinion to discuss why infection was not inevitable. But didn't the district court tell you straight out that your other experts could testify that same stuff if they wanted to? She did, Your Honor. The district court did, but an OBGYN cannot testify as to the infectious disease nature of E. coli. They're not an infectious disease expert. Dr. Deputy was not an infectious disease expert, which is why the court on the record said... What she said was that was basic medical knowledge and that they could testify to that kind of stuff. Respectfully, Your Honor, infectious disease is not basic medicine. I understand. I understand. All I'm trying to say is on an abuse of discretion review, where I have to find a case dead on that says what she did was wrong, I couldn't find the case, and I didn't think R&R Sales really was on point. And so, therefore, I'm saying to myself, she's hearing the evidence. She's making the decision. She's the one who's going to do this. She's not protecting the jury or trying not to protect the jury. She's got all this evidence that's coming in, and now she makes this decision in that circumstance. Is this an abuse of discretion? And the reason I think it's an abuse of discretion, Your Honor, is because when the court on the record said an infectious disease expert would be helpful in this circumstance, she created the very evidentiary gap she used to dismiss our cause of action, which does fall under the 37C1 exclusion sanction. There was no reason to exclude this expert. There was no harm. There was no bad faith. The judge should have listened to the testimony. She could have ruled her way eventually, but to exclude this expert that she herself acknowledged was necessary for this case. When on the record the court said an infectious disease expert would be helpful to understand these issues, we had an infectious disease expert. Could I take that point? Could I take you to your second issue on the defendants?  So I think the defendants point out that, I guess, first of all, in what form did this objection? There wasn't a motion in limine as to most of these experts. So the treating doctors were deposed. The district court did not allow direct testimony. It was only by sworn declaration. And in the sworn declaration, right before trial for the first time, the defendants went far beyond their deposition testimony to give expert opinion. There was no notice of this expert opinion. Did the plaintiffs rely on any of that new? The defendants make the claim that the plaintiffs relied on some of the same testimony you're now contesting here. No, Your Honor. You didn't designate any of the testimony that you now assert is new expert testimony? We did not designate the expert testimony. We designated the treating testimony. These are treating doctors. As this court's full aware, a hybrid can exist where a treater does a little bit more expert testimony. That is not uncommon in trial. However, when that occurs, disclosure is required under Rule 26A2C. Well, the problem comes again. Supposing I give you that disclosure was required and it didn't happen. So what? In this instance, where you got a judge who is going to hear all the evidence and put it all in her opinion, what you do in those instances when you think there's testimony that came in that shouldn't have come in, you go to her decision and try to find out if there's anything in her decision that relied on stuff you're now objecting to. And when I looked at this, the standard of care section only cites the retained experts. The conclusions of law section cites both treating experts and retained experts. But then, as I look to what they did, when I look at her decision, it seems to me that when we're talking about what an expert would testify, that's when the judge relies only on the expert testimony that was given. So, where is there a problem? The problem is, Your Honor, the court adopted Dr. Raabe's interpretation of ACOG, American College of Gynecology guidance, and fetal growth projections, and relied on Dr. Mata's testimony concerning the accepted obstetrical practice when an oversized or macrosomic baby is done. The court accepted that there's a transfer from the medical records of a fetal station where a forcep would be inappropriate at 1+. The defendant said at 2+, it was acceptable to them. They don't have a problem in medicine at a different fetal station than what was in the records. All of that is expert testimony. If I was given knowledge of expert testimony... I'm sorry, Mr. Chrisman. Did you make a Rule 37 motion for the exclusion? No, we did not have a chance. We objected at the time of the declarations. We made a secondary motion to strike the testimony. We asked for a rehearing on the testimony because it was brand new. It would be the mirror image if you're asking to exclude them. It would be the mirror image of their exclusion of your testimony, both of which were analyzed in Rule 37, right? Only on the expert testimony, not on their treating testimony. Again, as treaters, what they saw, what they did, what they said, all of that's fair game. But when you go into what the standards of practice are, the American College of Gynecology standards and guidelines, that's well beyond what a treating doctor does. And if they're going to give that testimony, I'm entitled to check the veracity of that testimony. Is it accurate? Are they accurate? Are they saying the right thing? That was taken away from me because they were not disclosed. And that's why disclosure is so important to this court. You took their deposition, didn't you? But they did not disclose these in the depositions, Your Honor. This was only a trial declaration right before trial testimony. So I had no ability to ask them questions about this. This is what amounts to complete surprise testimony, when expert testimony never disclosed as given, which is why this court requires disclosure. The defendants briefed their entire position on reports. I'm not asking for expert reports by treating doctors. I appreciate that.  We'll ask the government about that. Yes, Your Honor. And that's for sure, that's not your argument. The report is not the thing.  No, but disclosure is. It must be known that they're going to use expert testimony from a treater. I'm entitled to know that so I can prepare for that. That can't be right at the day of trial, last-minute information. It's impossible for any attorney to prepare for that. And for this family to get justice, I don't know what they're going to say. That is the opposite of trial, Your Honor. Right. You wanted to reserve some time. You have very little left, but we'll give you two minutes for rebuttal. Thank you very much. Thank you, Your Honors. And I didn't get to my Sobremesh third point, Your Honor, but it's briefed. And obviously we feel there are problems with the report on those grounds. Thank you, Your Honors. Ms. Bourbonna? May it please the Court. The first issue addressed by my friend is whether the district court abused its discretion in striking Dr. Offer-Lovey's report. We spent a lot of time on the briefing and discussing this issue a few minutes ago. I would just like to highlight that this issue is harmless because at the very first stage, the court found that there was no breach in standard of care. So without any breach in standard of care, the issue of causation is harmless. But turning to the merits of Rule 37.1, striking initially, I think my friend mischaracterized the timing and the scope of the report and its production. The outset of plaintiff's case set forth by Adam Levy, the OB-GYN, was that if the Tripler providers appropriately and correctly identified the estimated fetal weight, Mrs. Grenier would have been offered a C-section. If she had been offered that C-section, none of the parade of horribles that transpired would have. She would not have had the forceps delivery. She would not have had the shoulder dystocia, both of which they opined caused the E. coli to be transmitted from mom to baby. Dr. Wiswell responded to that and said, well, your position that a C-section would have prevented the transmission of E. coli is not necessarily the case. There is medical literature that says women are colonized with E. coli in their vaginas and other places. And so just by virtue of having the C-section would not necessarily prevent the transmission of the E. coli. He never said it was inevitable. He never said it was a far gone conclusion. But he focused his opinion on the mode of delivery. A neonatologist is a doctor who focuses on sick newborns, specifically. They're often in the delivery room accepting the newborn. So he explained his ability to reach that opinion. Offer Levy did not respond to that. He didn't say, well, women are not colonized with E. coli or where E. coli is in your vagina doesn't affect the transmission or from mom to baby. All he did was reiterate Adam Levy's initial opinion. So the characterization of it as a proper rebuttal report. Well, I mean, does he not say to the contrary, right? After he restates Wiswell's opinion to the contrary and then offers the opinion. I guess I'm not sure why any rebuttal, in fact, it's kind of the rules of the game, has to reiterate to some extent, reassert the other side's, their own theory. But he does engage in that. Why isn't that enough? I think all he does is say, well, he doesn't address the E. coli. He doesn't address the transmission. All he does is say, no, it would have happened by the cesarean section. It wouldn't have happened regardless of the cesarean delivery. And I think tying into that issue is my friend says there's no harm to the timing of this. There was harm. I couldn't depose him because his report was produced after the discovery cutoff. And plaintiffs refused to stipulate to extending the discovery cutoff so that I could take his deposition. I have no idea, the government has no idea what his background is in infectious disease. Is he qualified to testify or to have an opinion about a mode of delivery? Does he have any knowledge whatsoever about what can happen during a C-section? You know, how Dr. Wiswell explained that E. coli is more likely transmitted through your mucous membranes, your eyes, your nose, your mouth, breathing it in, not the skin. Is an infectious disease expert who may or may not have any experience with babies whatsoever. Did the district, I guess in terms of excluding it, again, if we take that as a rule 37 sanction, did the district court consider steps it could take instead of exclusion in terms of providing more time? I think the district court made a finding that under 37.1 and the Yeti and the Park cases, I believe, the standard is it's automatic, it has to be excluded if there's a showing of lack of sufficient reason for the delay and also substantial harm. And it made that finding. It also went beyond that finding and looked at the went factors. She looked even further than I think was maybe necessary looking at the need to manage the docket, the need to be fair, the need to have a ruling on the merits. I guess this is a good segue to the district courts allowing the defense experts. Did the district court engage in similar analysis and findings when the defense experts were asked to be excluded? So, again, I think my friend mischaracterized the admission of the treating providers. They were never offered to provide expert opinion. They were absolutely offered to explain why they did what they did. Did they rely on treating physicians? Did they consider documents in preparing their testimony that was different from what they encountered as recipient witnesses? No, Your Honor. We provided the declarations and the transcripts as a whole. It's very clear from their testimony that they testified based on their personal knowledge, what they did in that moment and why. And during the depositions, plaintiffs could ask them, for example, with Dr. Robbie. So did, for example, did Dr. Pilgrim take the photos of the baby? No, he was shown photos of the baby and said, is this what the baby looked like? And he said, that's not what the baby looked like when I delivered the baby. Dr. Robbie, the maternal fetal medicine specialist, was asked, you know, why didn't you do a C-section? And he said, well, you know, ACOG doesn't require, the standard of care is that you offer a C-section when the estimated fetal weight is 4,500 grams, and she wasn't. That's not opining on, that's not an expert opinion on the standard of care. That's defending his own reasoning and decision making. And to say that- I guess what do we, several in the findings at least, I think as we've discussed, the district court, when trying to establish the standard of care, when making findings as to that, which is usually often the subject of expert testimony as well, is explicitly referring to these witnesses, the treating witnesses, for purposes of establishing the standard of care. Respectfully disagree with that characterization. I think the findings of fact are based on the treating provider's personal knowledge. What did they do at the time the fact is laid out? And I would also point out that the findings of fact incorporate plaintiff's own testimony, the stipulated facts, which mirror often the treating provider's testimony, and also the stipulated medical records. And I think all three of those are in the record. And again, this isn't- What are the statements about what is or is not normal that Brock testified to, or what is or is not typical that Pilgrim and Mata testified to? When they're saying- Which the district court, I think, is referring to, at least one reading of it, could suggest is referring to as establishing a kind of standard of care. I think the district court did a really great job of condensing a lot of disputed facts into a readable document in the findings of fact section. And when the district court did that, she took out- She was able to identify what the treating providers did and the basis for that decision. And I think that's appropriate in the findings of fact. Because on the other side, plaintiffs are saying there's not enough information in there to- Right. Set that aside, Ms. Robata. I guess if I were to find that maybe this ends up on the other side of the Goodman line for these purposes, back to my original question, where did the district court perform a Rule 37 analysis, an exercise of discretion at that step? If there were an error under Rule 26 that would require an exercise of discretion under Rule 37, you've pointed to me where that happened with respect to the plaintiffs' experts. Where did that happen with respect to the defendants' experts? It didn't. And they didn't ask for it. Because if this were an upstream error of that, there was no exercise of discretion under Rule 37 by which we could assess prejudice, harmlessness, et cetera. Correct. There was no 37.1 analysis for the treating providers. Because they were not improperly withheld. They were properly- I know. Don't fight the hypothetical, though. If they were, we don't have a Rule 37 exercise of discretion to determine not just harmless error as an appellate court, but harmless, the prejudice question that Rule 37 requires. Correct. Was there any trial testimony, I ask him this, that was not previewed in discovery? Any trial testimony that was not previewed in discovery? Because- No. Because I understood it. They had a right to take the depositions of these doctors. They had a right to go through and do everything. And then you say that they told us that they were going to say what they did and why. What they did and why is pretty wide. And I said to myself, was there any trial testimony that wasn't previewed in the prior discovery? I think previewed is an interesting, I suppose, characterization. I think, you know- Well, that's my word. It's not supposed to be a magic word. It's just trying to me to get to the point, so what? Right. Because this judge is hearing the evidence herself. It's unclear to me what plaintiffs would have done differently, what questions they would have asked differently, what they weren't able to ask. Why didn't they ask any follow-up questions at the trial about the standard of care that they apparently question? That goes- and what follows from that? Because that sounds like it would go to the Rule 37 analysis of lack of prejudice, but I think your answer to Judge Johnstone was, like, we can't defend the district court on that ground because there wasn't the analysis, right? Correct, but I'm essentially responding to my friend's argument from five minutes ago, or seven minutes ago, of the prejudice that plaintiffs faced in not- apparently not knowing what was going to be testified to and how they couldn't ask questions or cross-examine or otherwise address it. I think they could have, and I don't think they were surprised by any of the testimony. I note that the plaintiffs themselves introduced the deposition testimony from Dr. Raby and Dr. Pilgrim in their case-in-chief. They did, Your Honor. Is there a legal doctrine that now bars them from challenging that testimony on appeal? I don't know that there's a legal doctrine, but perhaps one of common sense. If they didn't want the court to consider the testimony of these two doctors, why did they present the court- they affirmatively presented the court with that testimony? Do you take it- so I take it you disagree that that testimony that we're referring to is the same testimony that they now claim is expert testimony? Or is it- because there wouldn't be a problem here if- I think they concede that they introduced the testimony, but if they introduced their testimony as treating percipient witnesses and not as expert, then there's not a conflict here. The problem would be if the government relied on the expert testimony side of the witnesses. I understand the reframing of that issue. And I would just say that none of the testimony that was given by the treating providers was in fact expert testimony. It was all- all of their testimony provided was based on their personal knowledge and their personal experience. And I would also point out that the district court didn't allow questioning of plaintiffs when they attempted to broach expert testimony. When plaintiffs asked questions of the experts that were broad-ranging about other people's notes, about other people's medical records, about other issues, the district court said that's not relevant. They are not experts. You can only ask them questions about their personal knowledge. Which I think- So it's your argument then that Rule 26A-2C summaries were not needed? Yes. That's what I thought. If there are no further questions, thank the court. And I ask the court to affirm the district court's opinion in its entirety. Thank you. Can we please the courts, Your Honor? The two things I'd like to reference in the first round as to whether or not there was a harmless error. There absolutely was a harmless error in the striking of Dr. Alfred Levy. He was not able to opine as to why this trial was not inevitably failing. When my learned counsel said that that was not used, I will cite you to the record 3 ER 560-61 where Dr. Wiswell did in fact say it was inevitable that this trial was going to fail from E. coli. Why? Why this trial versus every other child ever born in the country, why this child? That is what Dr. Alfred Levy was going to respond to. Why this child failed, not because it was inevitable, but because they did not follow the standard of care, which Dr. Adam Levy said. And then he would go on as an infectious disease doctor to say the breach is the cause of the E. coli infection. But the E. coli infection itself was not inevitable, but was a result of the breach of the standard of care. Those are two different things. I also would like to add that the timing issue, Dr. Levy was properly disclosed as a rebuttal expert six months before trial. The June disclosure Dr. Alfred Levy was given, trial was in December. The government's failure to depose Dr. Levy for six months is not the responsibility of plaintiffs. Lastly, into the issue of the treating experts, the defendants were not listed as treating experts. The court's sua sponte on its own determined they were precipient expert witnesses, which I believe is why they were never disclosed. But to say there was nothing different between the trial testimony I designated and the trial testimony given in declaration, I will cite to paragraph 23 of Dr. Levy's declaration, where he references the American College of Gynecology Standards for C-section. That is not part of what he does when he treats. When he treated this family, this 21-year-old Marine and his wife, Dr. Rabig never said, let me explain the American College of Gynecology Standards to you. Let me explain the protocols of ACOG. Are you talking about the information of ER-62? I'm talking, Your Honor, about ER-377. Okay. I haven't got that in front of me, so I don't, I'm not able to. I mean, my worry is that a lot of the testimony that Dr. Rabig was, if you will, concluding, was also provided in his deposition. And so I didn't know how you were prejudiced, but I don't know about that particular. With respect, I'd also ask, Your Honor. I haven't been there. I'm sorry. With respect, I'd also ask, Your Honor, to look at the growth chart. A growth chart is what's done to plot a baby's size and length and weight. No growth chart was ever done in this case by the defendants. They never made a growth chart in any of the records. There was a 30-minute recess for them to look for one. They could not find one. However, plaintiff's expert, Dr. Adam Levy, made a growth chart that the defendants in their declaration discussed and spoke about what they would have done in a growth chart had they made a growth chart. That is expert testimony by its nature. That was not in deposition because there was no growth chart, so I never questioned them about the growth chart because they never did one. Why did you question them about them anyway? Because there was no growth chart in the records. This was before that came out through expert testimony. The next objection is going to be, well, all this came out when they asked him. We didn't ask him any of that. We didn't try to get him to talk about that. They only talked about that when he asked him that on cross-exam. That's going to be the next objection. Well, no, with respect, Your Honor, that is the issue of direct exam that goes beyond the testimony. No objection could be made because no direct exam occurred here, only declarations. And once those declarations were provided right before in the EVA trial, we objected. We objected at the time. We objected contemporaneously. We objected at the time they actually gave the testimony. But there was nothing we could do to check the veracity of those statements because they were not part of their treatment. They were expert testimony that required disclosure under the most basic sense of federal rules of fairness, which is 26A2C disclosure. Thank you, counsel. Thank you, Your Honor. We thank both counsel for their helpful arguments, and the case is submitted, and we are adjourned. All rise.
judges: SMITH, MILLER, JOHNSTONE